COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| ISRAEL GAYTAN, | | No. 08-07-00039-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 409th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20030D04180) |
| | § | |

**O P I N I O N**

Israel Gaytan appeals his conviction of aggravated sexual assault of a child. A grand jury returned an indictment against Appellant alleging three counts of aggravated sexual assault of a child. The State abandoned Count III of the indictment prior to the jury trial and Appellant entered pleas of not guilty to the remaining two counts. The trial court granted a directed verdict of acquittal as to Count I, but the jury found Appellant guilty of Count II as alleged in the indictment. The jury assessed Appellant's punishment at a $5,000 fine and imprisonment for a term of ten years, but it determined that the sentence should be probated. The trial court sentenced Appellant in accordance with the jury's verdict and placed him on community supervision for a term of ten years. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

On June 26, 2003, an El Paso Police Officer, Linda Hanner, was dispatched to a call involving an allegation of aggravated sexual assault of a child. Hanner met with the child victim's mother, Norma Erica Rodriguez, and gathered information from her. After calling her lieutenant, Hanner transported Rodriguez and the child, Jahaira Atilano, to the Advocacy Center. Due to its

nature, the case was assigned to a specialized unit, Crimes Against Children (CAC), for investigation.

Abram De La Hoya is a detective with the El Paso Police Department who was assigned to CAC at the time this case was under investigation. As a CAC detective, De La Hoya had received specialized training on how to properly interview children without leading them or being suggestive. On June 26, 2003, he interviewed six-year-old Atilano at the Advocacy Center. Due to her young age, Atilano was unable to recall the exact date of the assault. However, De La Hoya used various events, including holidays, birthdays, the child's living arrangements, and the seasons, to determine that the assault had taken place approximately one year prior to the interview. Due to the passage of time, a medical examination was not performed on Atilano because it was unlikely that any forensic evidence existed. After completing his investigation, De La Hoya obtained an arrest warrant for Gaytan.

De La Hoya did not relate during direct examination the specific statements made by Atilano about the assault. During cross-examination, however, defense counsel elicited from De La Hoya that Atilano had told him that Appellant had penetrated her anus with his penis.[1] Atilano told De La Hoya that it hurt and made her feel sad. Atilano also said that Appellant had been "nasty" with her but he had done it only once. In response to defense counsel's question whether it was his opinion that Atilano had always told him the truth during the interview, De La Hoya replied, "Yes." In De La Hoya's opinion, Atilano understood the difference between telling the truth and a lie and she knew there were consequences to telling a lie. Specifically, Atilano told him that she would not go to Jesus if she told a lie. Atilano related during the interview that no one else had done this to her. While De La Hoya was investigating the case, allegations were made against another family member

---

[1] Atilano also told De La Hoya that Appellant had penetrated her vagina with his finger.

of Appellant, but it was a separate investigation. It was not clear from De La Hoya's testimony who had made the allegation or which family member was the subject of that investigation.

Atilano, who was nine-years-old at the time of trial, testified about the assault. Appellant is her cousin and she had known him since she was little. Appellant would sometimes babysit Atilano and her cousin, Mayanin,[2] while Atilano's mother went out. On this occasion, Atilano was at "Doug's" house while her mother and Doug went to the store. Her brothers and her cousin Mayanin were also present. Appellant arrived while they were watching a movie. Atilano had fallen asleep on the couch and Appellant carried her into a bedroom and locked the door. Appellant touched her vagina over her clothes with his fingers. She told him to stop but he didn't. Appellant then took Atilano to the restroom, pulled down her pants, and put her stomach "on the furniture" in front of the bathroom mirror with her legs hanging down. Appellant then put his penis in her "butt." Atilano recalled that it hurt a lot and felt "nasty." Appellant told the child that he would burn her hands with the lighter if she told anybody. Appellant put Atilano back down on the floor and she pulled up her pants, unlocked the door, and got out. Frightened by the threat, Atilano did not tell anyone what had happened, but her grandmother found out and called the police.

On cross-examination, Atilano admitted that she did not really like Appellant because he was sometimes mean to her and her brothers. Defense counsel questioned Atilano about falsely accusing a man in Juarez named Angel Escobar of sexually abusing her by grabbing her butt with his hand. Atilano denied that Escobar had grabbed her butt and denied telling anyone that he had. Defense counsel also questioned Atilano about telling her mother's boyfriend, Erico, that he was not her father and if he kept on bossing her around she would call the police and tell them he had touched her private parts. Atilano admitted telling Erico he was not her father and to quit bossing her around

_____

[2] Mayanin is Appellant's sister.

or she would call the police but she denied threatening to falsely accuse him of sexual assault.

Appellant called Atilano's mother, Norma Erica Rodriguez, to testify on his behalf. Rodriguez explained that Doug was a friend who let her stay at his home when she had no place to stay. She did not remember his last name but he lived in Northeast El Paso. Appellant is Rodriguez's first cousin. Rodriguez heard Atilano tell Erico that he was not her father and to stop bossing her around or she would call the police. But Atilano did not threaten to tell the police that Erico had touched her private parts. Defense counsel also asked Rodriguez about Atilano falsely accusing Angel Escobar. According to Rodriguez, Atilano said Escobar gave her two pesos, spanked her on the butt and told her, "Go with your Grandma." Atilano did not accuse him of doing anything else. Instead, a neighbor in Juarez said she had seen him rubbing Atilano's butt and called the police.

Appellant's mother, Virginia Rosales Maldonado, contradicted Rodriguez's testimony. She said that Rodriguez had told her that there was a problem with Atilano and Erico. When Erico scolded Atilano, she told him that she was not going to listen to him because he was not her father and he should not bother her because she was going to tell the police that he had touched her private parts. According to Maldonado, Atilano had also falsely accused a man in Juarez, Don Angel, of touching her buttocks.

Appellant's brother, Alain Gaytan, recalled that he went to Doug's house only three times when Rodriguez and her children, including Atilano, were present. Appellant was present only once. On that occasion, Rodriguez left to go to the store but she did not leave the children alone with them as Alain's grandmother was also present. Alain testified that he was familiar with Atilano's reputation for telling the truth and it was not good because "she lies for everything."

Appellant testified that he was nineteen-years-old when Atilano was six. He had only met

Doug twice. The first time he met Doug was when he helped Rodriguez move into Doug's house which was located on the far east side of El Paso. Other adults were present on this occasion. He met Doug a second time at a relative's house. Appellant denied sexually assaulting Atilano.

The jury rejected Appellant's defense and found him guilty of aggravated sexual assault as alleged in Count II of the indictment. The jury assessed Appellant's punishment at a $5,000 fine and a ten year term of imprisonment, probated.

## FACTUAL SUFFICIENCY

In Issue One, Appellant contends the evidence is factually insufficient to support his conviction of aggravated sexual assault of a child. He argues that the evidence admitted at trial, particularly Atilano's testimony, is too weak to support the jury's guilty verdict. Further, he asserts that the contrary evidence adduced at trial, including his denial, was too strong to support a finding of guilt beyond a reasonable doubt.

### Standard of Review

In reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing our review, we are to give due deference to the fact finder's determinations. *See id.* at 8-9; *Clewis*, 922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Evidence is factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Thus, the question we must consider in conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and against the

finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See id.*

Under the first prong of *Johnson*, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of *Johnson*, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id*. Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson*, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*.

We are guided by three basic ground rules in conducting a factual-sufficiency analysis. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex.Crim.App. 2008). First, we must remain cognizant of the fact that a jury has already passed on the facts and must give due deference to the determinations of the jury. *Id.* at 705-05. While we may disagree with the factfinder, we must afford the appropriate deference in order to avoid substituting our judgment for that of the jury. *Id.* at 705. Second, our should clearly lay out and explain how the evidence supporting the verdict is too weak on its own, or state how the contradicting evidence greatly outweighs evidence in support of the verdict. *Id.* This is particularly important because it assists the Court of Criminal Appeals in determining whether we applied the standard of review properly. *Id.* Third, we review all of the evidence in a neutral light, as opposed to a legal-sufficiency review in which the evidence is viewed in the light most favorable to the verdict. *Id.*

*Elements of the Offense*

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means. TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(i)(Vernon Supp. 2008). Count II of the indictment alleged that Appellant intentionally and knowingly caused the penetration of Atilano's anus with his penis and that Atilano is a child younger than fourteen years of age. The application paragraph of the court's charge tracked the language of the indictment.

### Review of the Evidence

With the exception of his legal sufficiency challenge raised in Issue Two directed at the territorial jurisdiction element, Appellant has not challenged the legal sufficiency of the evidence supporting his conviction. Consequently, we presume that the evidence is legally sufficient to support the allegation that Appellant sexually assaulted Atilano by intentionally and knowingly causing his penis to penetrate her anus. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). Evidence that is legally sufficient can still be factually insufficient under the standards set forth in *Watson* and *Johnson*. Appellant asserts that the evidence is factually insufficient under both prongs of *Johnson*.

### First Prong of Johnson

We consider first whether the evidence is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand. Atilano directly testified that Appellant penetrated her anus with his penis. It is well established that a child victim's testimony alone is sufficient evidence to support a conviction for aggravated sexual assault. TEX.CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Perez v. State*, 113 S.W.3d 819, 837-38 (Tex.App.--Austin 2003, pet. ref'd), *overruled on other grounds by Taylor v. State*, 268 S.W.3d 571 (Tex.Crim.App. 2008). Therefore, Atilano's testimony, if believed by the jury, is factually sufficient to prove that Appellant committed

aggravated sexual assault as alleged in Count II of the indictment.

As proof that the evidence is weak, Appellant points to the lack of outcry or medical evidence, the implausibility of Atilano's accusation, her inability to recall details, and contradictory statements made during her testimony. Appellant's argument is essentially directed at the credibility of the complainant, a matter which is solely the responsibility of the jury to determine. We are instructed to afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility. *Lancon*, 253 S.W.3d at 705. The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record. *Id.*; *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006).

Appellant asserts that the lack of outcry testimony and medical evidence weighs strongly against the jury's verdict. It is true that Atilano did not make an outcry. However, Atilano explained that she did not tell anyone about the assault because Appellant had threatened to burn her hands with a lighter. Regarding the lack of medical evidence, Detective De La Hoya testified that because the investigation did not begin until more than a year after the incident it probably would not have been possible to obtain any forensic evidence. Because a rational jury could find these explanations persuasive, the absence of outcry or medical evidence does not render the evidence factually insufficient.

Keeping in mind the required amount of deference to the jury's credibility determinations, we consider now whether the evidence tending to impeach the complainant is of such force to preclude a rational jury from believing her. Appellant argues that the evidence is factually insufficient because Atilano had a motive to fabricate the allegations because she disliked him. The mere existence of a motive to fabricate does not render the evidence factually insufficient. *See*

*Griffin v. State*, No. 01-06-00809-CR, 2007 WL 3307096, at *4 (Tex.App.--Houston [1st Dist.] Nov. 8, 2007, pet. ref'd)(not designated for publication)(holding that a motive to lie does not overcome the victim's testimony in an aggravated sexual assault of a child case if the jury chooses to believe that testimony); *Wells v. State*, No. 05-99-02078-CR, 2002 WL 202488, at *2-3 (Tex.App.--Dallas Feb. 11, 2002, pet. ref'd)(not designated for publication)(holding that the motive to fabricate and inconsistencies in testimony were matters for the fact finder to resolve).

Appellant makes several other arguments challenging Atilano's credibility. Appellant asserts that Atilano lacks credibility because she falsely claimed to have never seen a penis. As proof that Atilano's testimony was false, Appellant points to her use of the slang words "dick"[3] and "pussy" to refer to male and female sexual organs. According to Appellant, Atilano's use of these slang words is inconsistent with her being a "naive person, as she claimed to be." The State emphasizes that Atilano never claimed to be a "naive person." Appellant does not cite any support for his implied assertion that a nine-year-old child could know these words only if she had actually seen a penis. The fact that Atilano had heard or been taught to use these slang words is a reflection on the environment in which she lived but it does not render false her testimony that she had never seen a penis. Simply put, Appellant's logic is faulty.

Along this same line, Appellant claims Atilano's testimony about how the assault occurred is implausible insofar as she testified that Appellant put his penis in her butt one time and removed it. In Appellant's opinion, an assault lasting only two to three seconds is inconsistent with the behavior of a "hard-up pedophile." There are numerous problems with Appellant's argument but we point out the most obvious. First, there is no evidence in the record that the assaultive behavior

---

[3] Atilano did not want to say the slang word for penis in front of the jury so the prosecutor permitted her to spell it instead.

lasted only two to three seconds. Second, even if Appellant is correct in his characterization of the witness's description of the assault, his assumption that pedophiles only engage in prolonged assaults is unsupported by the record. There is nothing inherently implausible about Atilano's description of the assaultive conduct.

Appellant next argues that Atilano's failure to display any emotion at the time of the assault or during her testimony is evidence that her allegation is false. Appellant's argument is not supported by the record. Atilano told investigators that the assault made her feel sad, "nasty," and scared. She also said that it hurt and she wanted to scream but she was afraid because Appellant had threatened to burn her hands. There is nothing in the record showing Atilano was emotionless during her testimony. To the contrary, there is some indication in the record that she was nervous. Even without this evidence of nervousness, we believe it is the jury's task to evaluate the witness's testimony in light of her emotional state and demeanor. It is impossible for us to evaluate a witness's emotions and demeanor based upon reading a cold record.

Appellant also contends that the complainant contradicted herself on every detail of the assault and provided irreconcilable accounts of how the attack occurred. He argues that Atilano was inconsistent in her description of the events leading up to and following the attack and the attack itself. When Atilano's testimony is considered in a neutral light, we disagree that she contradicted herself on every detail of the assault as Appellant claims. Instead, she consistently testified that she was asleep on the couch when Appellant arrived; he sat next to her feet on the sofa, he picked her up and carried her into a bedroom, he locked the door, and he sexually assaulted her by penetrating her anus with his penis. She maintained her assertions about the assault despite a detailed and at times pointed cross-examination. And Atilano's testimony about the assault was consistent with her statements to the detective who interviewed her three years earlier. Her failure to clearly recall all

of the details about the day, including where she was living, the date and time of day when the assault occurred, how Appellant arrived, and who let him into the house, does not make her testimony inconsistent or implausible. Giving the appropriate amount of deference to the jury's credibility determination, we conclude that the evidence of guilt is not so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand.

*Second Prong of Johnson*

We now consider Appellant's contention that the proof of guilt is greatly outweighed by contrary evidence. Appellant first argues that his testimony denying he committed the offense renders the evidence factually insufficient because he was not impeached. Appellant's testimony was directly contradicted by the testimony of the complainant. It was the jury's task to resolve this conflict in the evidence and determine whether it believed the complainant or Appellant. The evidence is not factually insufficient simply because Appellant denied committing the offense.

Appellant challenges Atilano's credibility under the second prong of *Johnson.* He points to his own testimony that he was never alone with Atilano and the younger children at Doug's house as proof that the complainant is not credible. Additionally, he relies on Rodriguez's testimony that she did not remember leaving the children with Appellant at Doug's house. On cross-examination, however, Rodriguez contradicted herself and said she sometimes left the children with Appellant at Doug's house while she went out with her aunt. It was within the jury's province to believe Rodriguez's testimony given on cross-examination and reject all of the evidence to the contrary. *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex.Crim.App. 2001)(noting jury is free to believe all, some, or none of the testimony of any witness); *Chambers*, 805 S.W.2d at 461 (same). Appellant also attacks Atilano's credibility by focusing on Rodriguez's testimony that Atilano sometimes lied to her. This was only a portion of Rodriguez's testimony on the subject of Atilano's truthfulness.

She went on to explain that Atilano only lied about "little kid stuff" and did not tell serious or "big" lies. When confronted with a lie, Atilano would tell the truth. Rodriguez's testimony about Atilano's capacity to lie is not so strong that it contradicts the jury's verdict.

Finally, Appellant asserts that Atilano was impeached with the evidence that she had falsely accused her mother's boyfriend, Erico, and Angel Escobar. Atilano admitted telling Erico that he was not her father and to stop bossing her around or she would call the police. She flatly denied threatening to tell the police that he had sexually assaulted her. Her mother denied hearing Atilano make such a threat. Regarding the accusation made against Angel Escobar, both Rodriguez and Atilano testified that Atilano had stated only that Escobar spanked her on the butt and told her to go to her grandmother. Both witnesses denied that Atilano had ever accused Escobar of sexually assaulting her. There is evidence that it was a neighbor of Escobar who had called the police in Juarez and reported that she had seen Escobar rubbing Atilano's butt. Appellant's mother testified that it was Atilano who had made the accusation against Escobar, but she admitted that she was not present when the events occurred or when the accusation was made and she was basing her testimony only on what other people had told her. It was for the jury to resolve these conflicts in the evidence, determine what weight should be given to the evidence, and to evaluate the credibility of the various witnesses. The evidence regarding other accusations purportedly made by Atilano is insufficient to contradict the jury's verdict.

In conclusion, the evidence at trial was contested and the case rested on the credibility of the various witnesses. The jury rejected Appellant's defenses and resolved the issues against him. Having reviewed all of the evidence in a neutral light, we are unable to conclude that the evidence supporting the jury's determinations is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand or that the proof of guilt is greatly outweighed by contrary evidence.

Accordingly, we overrule Issue One.

**LEGAL SUFFICIENCY**

In Issue Two, Appellant challenges the legal sufficiency of the evidence supporting the jury's determination that the offense occurred in Texas. An offense may be prosecuted in Texas only if Texas has territorial jurisdiction over the offense. Texas has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which he is criminally responsible if either the conduct or a result that is an element of the offense occurs inside this state. TEX.PENAL CODE ANN. § 1.04(a)(1)(Vernon 2003). Ordinarily, in reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict and determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). It is unclear whether the State must prove territorial jurisdiction beyond a reasonable doubt or by a preponderance of the evidence. *See Torres v. State*, 141 S.W.3d 645, 654 (Tex.App.--El Paso 2004, pet. ref'd). Because we find the evidence legally sufficient under the more stringent beyond a reasonable doubt standard, it would also be sufficient under the preponderance of the evidence standard. Detective De La Hoya testified that he determined as part of his investigation that the sexual assault occurred in El Paso County, Texas. Direct testimony by a police officer that the offense occurred in Texas is legally sufficient to prove territorial jurisdiction beyond a reasonable doubt. *See St. Julian v. State*, 132 S.W.3d 512, 515 (Tex.App.--Houston [1st Dist.] 2004, pet. ref'd). While no witness testified as to the exact address of Doug's house, more than one witness said that the house is in El Paso. We find that the State proved beyond a reasonable doubt that the offense occurred in Texas. Issue Two is overruled. The judgment of the trial court is affirmed.

July 31, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment

(Do Not Publish)